IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

KENNETH JACKSON,

      Plaintiff,                          CIV. S. 05-1779 MCE GGH

   vs.

MICHAEL J. ASTRUE,[1]                  <u>FINDINGS AND RECOMMENDATIONS</u>
Commissioner of Social Security,

      Defendant.
_____/

      Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying plaintiff's application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"). For the reasons that follow, the court recommends plaintiff's Motion for Summary Judgment or Remand be granted in part, the Commissioner's Motion for Summary Judgment be denied, and the Clerk be directed to enter judgment for the plaintiff. This case should be remanded for further findings pursuant to sentence four of 42 U.S.C. §405(g).

---

[1] Michael J. Astrue became Commissioner on February 12, 2007. Accordingly, he should be substituted as defendant in this suit. Fed. R. Civ. P. 25(d)(1). No further action need be taken by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

1

BACKGROUND

Plaintiff, born April 19, 1959, applied for disability benefits on March 20, 2003. (Tr. at 44.) Plaintiff alleged he was unable to work due to diabetes, stomach pain, high blood pressure, back pain, headaches, and chest pain. (Tr. at 52, 20.) In a decision dated October 15, 2004, ALJ Antonio Acevedo-Torres determined that plaintiff was not disabled.[2] The ALJ made the following findings:

> 1. The claimant has not engaged in substantial gainful activity since November 5, 2002.
>
> 2. The medical evidence establishes that the claimant has severe diabetes mellitus, hypertension, and borderline intellectual functioning, but that he does not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4.

---

[2] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

>    3.   The undersigned can not credit the claimant's testimony that he is limited to standing and walking 10 to 15 minutes at a time, sitting 15 to 20 minutes at a time, or that he otherwise cannot perform the requirements of his past relevant work because such allegations have not been shown to be a reasonable consequence of any medically determinable impairment.
>
>    4.   The claimant has the residual functional capacity to perform work-related activities except for work involving lifting and carrying more than 25 pounds frequently or 50 pounds occasionally or complex and detailed tasks. (20 CFR 416.945).
>
>    5.   The claimant's past relevant work as a janitor did not require the performance of the work-related activities precluded by the above limitation(s) (20 CFR § 416.965).
>
>    6.   The claimant's impairments do not prevent the claimant from performing his past relevant work.
>
>    7.   The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of the decision (20 CFR § 416.920(e)).

(Tr. at 22-23.)

On appeal, the Appeals Council denied plaintiff's request for review. It found in part that the record supported a conclusion of borderline intellectual functioning, as asserted by plaintiff's recently appointed representative, and "[t]hus, [plaintiff's] representative's assertion does not support a finding that listing 12.05C is met or even equalled." (Tr. at 5-6.)

ISSUES PRESENTED

Plaintiff has raised the following issues: A. Whether the ALJ Failed to Properly Review the Evidence at Step Two of the Analysis; B. Whether the ALJ Failed to Consider Properly Any Listed Impairment at Step 3 of the Sequential Evaluation; and C. Whether the RFC Given Plaintiff is not Supported by Substantial Evidence.

LEGAL STANDARDS

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir.1999).

Substantial evidence is more than a mere scintilla, but less than a preponderance. Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). "'It means such evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 402, 91 S. Ct. 1420 (1971), quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229, 59 S. Ct. 206 (1938). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002).

ANALYSIS

    A.  <u>Whether the ALJ Failed to Properly Review the Evidence at Step Two of the Analysis</u>

Plaintiff first claims that the ALJ erroneously excluded from consideration at step two plaintiff's obesity, chest wall pain with shortness of breath, back and knee arthritis, and adjustment disorder with depressed mood.[3]

At the second step of the disability analysis, an impairment is not severe only if it "would have no more than a minimal effect on an individual's ability to work, even if the individual's age, education, or work experience were specifically considered." SSR 85-28. The purpose of step two is to identify claimants whose medical impairment is so slight that it is unlikely they would be disabled even if age, education, and experience were taken into account. Bowen v. Yuckert, 482 U.S. 137, 107 S. Ct. 2287 (1987). "The step-two inquiry is a de minimis screening device to dispose of groundless claims." Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996). At this step, the ALJ may decline to find a severe impairment "*only* if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability

---

[3] A review of the record indicates that there is some question about plaintiff's alcohol abuse and whether it is ongoing. This issue was not raised or analyzed by the parties. Therefore, the court declines to address it.

to work." Webb v. Barnhart, 433 F.3d 683, 686-87 (9th Cir. 2005) (emphasis in original).

Plaintiff makes a very cursory contention that he suffers from the above severe impairments, with only one or two transcript page references for each alleged severe impairment. Plaintiff makes no argument whatsoever in support of his contentions, such as how each of these impairments affects his ability to do work activities.[4]  Therefore, plaintiff has not met his burden. See Bowen v. Yuckert, supra, 482 U.S. at 146, n.5.

B. Listing 12.05C

Plaintiff next contends that listing 12.05C should have been considered because plaintiff's full scale IQ score was 70. As a result, the ALJ should have developed the record by ordering school records, obtaining additional testing, and/or obtaining a medical expert to determine retardation, especially since plaintiff was unrepresented at the hearing. When considered in combination with plaintiff's other severe impairments, plaintiff claims he meets this listing.

The ALJ determined in finding no. 2 of the decision that plaintiff's impairments did not meet or equal an impairment listed in the Regulations' "Listing of Impairments" ("Listings"), which lists impairments to thirteen categories of body systems which are severe enough to preclude any gainful activity. Young v. Sullivan, 911 F.2d 180, 183 (9th Cir. 1990); 20 C.F.R. § 404.1520(d). When all the requirements of a listing are met, the described condition is irrebuttably presumed disabling. Key v. Heckler, 754 F.2d 1545, 1550 (9th Cir. 1985); 20 C.F.R. § 404.1520(d).

\\\\\

---

[4] Furthermore, plaintiff's allegation of "chest wall pain" is merely a symptom, not a diagnosis. Plaintiff can only establish an impairment if the record includes signs – the results of "medically acceptable clinical diagnostic techniques," such as tests – as well as symptoms, i.e., plaintiff's representations regarding his impairment. Ukolov v. Barnhart, 420 F.3d 1002, 1004-1005 (9th Cir. 2005). Here, plaintiff has referred to two pages in the record which do not assess an actual diagnosis but state only, "chest pain and shortness of breath, rule out angina," and "chest wall mus strain." (Tr. at 168, 189.) These statements do not qualify as diagnosing a severe impairment.

5

1          At the third step of the disability analysis, the ALJ determines whether a person's condition either "meets" or "equals" a listing. A mere *diagnosis* of a listed impairment is not sufficient. Specific findings included in each listing also must be met. See, e.g., Key v. Heckler, 754 F.2d 1545, 1550 (9th Cir. 1985). Alternatively, other diagnostic tests, or the combined effects of various conditions, may demonstrate the "equivalent" of the specific required findings. See, e.g., Sullivan v. Zebley, 493 U.S. 521, 531 (1990); Marcia v. Sullivan, 900 F.2d 172 (1990). In sum, however, unless an impairment is as severe as and has lasted as long as described in the listing, a person is not presumptively disabled. Young, 911 F.2d at 183.

         Listing 12.05 provides in part:

> Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>        The required level of severity for this disorder is met when the requirements in A, B, C, **or** D are satisfied.
> ...
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing additional and significant work- related limitation of function;
> ...

20 CFR § 12.05 (emphasis added).

         "An impairment imposes a significant work-related limitation of function when its effect on a claimant's ability to perform basic work activities is more than slight or minimal." Fanning v. Bowen, 827 F.2d 631, 633 (9th Cir. 1987). This, in other words, is the definition of a "severe" impairment. In this circuit, a person who has a severe physical or other mental impairment, as defined at step two of the disability analysis, apart from the decreased intellectual function, meets the second prong of the §12.05C listing. Id.; see also Hinkle v. Apfel, 132 F.3d 1349, 1352 (10th Cir. 1997); Edwards v. Heckler, 736 F.2d 625, 629-31 (11th Cir.1984); Nieves v. Secretary of Health & Human Servs., 775 F.2d 12, 14 & n. 7 (1st Cir.1985). Indeed, in footnote 3 of the Fanning decision, the court found that the "extra" impairment need not even

6

1  reach the "severe" limit; although one might be hard pressed to call a less than "severe"
2  impairment, an impairment at all.
3         In Fanning, the first prong of the listing was met because plaintiff's IQ was found
4  to be between 76 and 69. Fanning, 827 F.2d at 633. The court imposed a standard applicable to
5  the second prong, that the impairment must have more than a slight or minimal effect on
6  plaintiff's ability to perform basic work activities. Id. Because the ALJ had not considered this
7  question in regard to the plaintiff's knee injury, the court remanded the matter. Id.
8         In the instant case, the ALJ found plaintiff to have the severe impairment of
9  borderline intellectual functioning. (Tr. at 21.) In making this finding, the ALJ found that
10 plaintiff's full scale IQ scores were in the low 70s. (Id.) Plaintiff argues that he has met this first
11 prong of subsection (C) of the listing because the evidence shows his full scale IQ score to be 70.
12 The record evidence indicates that Dr. Richwerger assessed an IQ score of 70. (Tr. at 175.)
13 Although the record indicates a range of IQs mostly in the low 70s, the listings specify that when
14 verbal, performance, and full scale scores are provided by IQ tests, the ALJ must consider the
15 lowest of these scores. 20 C.F.R., Pt. 404, Subpt. P, App. 1, § 12.00(D)(6)(c). Therefore,
16 plaintiff has met the first prong of the listing.
17        The listing also requires that a subaverage intellectual functioning must have
18 existed before age 22. Plaintiff urges for remand because, in part, he has a history of special
19 education. The only record which might possibly indicate onset prior to age 22 is plaintiff's
20 disability report, dated March 13, 2003, indicating that he attended a continuation school in 12th
21 grade and was in a program for "slow kids," and plaintiff's statement to Dr. Richwerger that he
22 was in special education classes during his senior year in high school. (Tr. at 58, 172.) The only
23 evidence to support plaintiff's claim that he suffered from borderline intellectual functioning
24 prior to age 22 is his own testimony and statements to medical professionals. Although lay
25 evidence may be permissible, the date alleged by the plaintiff should be used only when
26 consistent with other available evidence. Social Security Ruling 83-20. "The impact of lay

1 evidence on the decision of onset will be limited to the degree it is not contrary to the medical
2 evidence of record." (Id.)  The fact that plaintiff may have been enrolled in a special education
3 program does not automatically lead to the conclusion that it was due to borderline intellectual
4 functioning.  Furthermore, reliance solely on a claimant's statements without corroboration
5 creates the potential for abuse, especially in this case where the ALJ found plaintiff's statements
6 regarding his physical functioning could not be fully credited.  (Tr. at 22.)

7         At the time plaintiff made these statements, he was not represented by counsel;
8 however, he was represented by his present attorney at the time of his appeal to the Appeals
9 Council, and his attorney had the opportunity to submit evidence of mental retardation prior to
10 age 22.[5]  (Tr. at 259.)  Counsel failed to do so.  As a result, the Appeals Counsel affirmed the
11 finding of borderline intellectual functioning, as supported by the record, but that listing 12.05C
12 was not met or equaled.  (Tr. at 6.)  Plaintiff has still not submitted any evidence of onset date,
13 such as school records, report cards, or psychologist's reports.  Although the ALJ did not address
14 listing 12.05C, he was presented insufficient evidence which should have caused him to do so.
15 Without evidence of onset prior to age 22, listing 12.05 can not be satisfied.

16         C.  <u>Whether the RFC Given Plaintiff is not Supported by Substantial Evidence</u>

17         Plaintiff claims that in finding he could do the full range of medium work, the
18 ALJ did not "review any medical report specifically, or provide clear basis for the chosen RFC."
19 This sentence is the sum total of plaintiff's argument.

20         Medium work is defined as "lifting not more than 50 pounds at a time with
21 frequent lifting or carrying of objects weighing up to 25 pounds."  20 CFR §§ 404.1567(c);
22 416.967(c).  Social Security Ruling 83-10 more specifically outlines the prerequisites of medium
23 work, for which the full range requires "standing or walking, off and on, for a total of
24 approximately 6 hours in an 8-hour workday in order to meet the requirements of frequent lifting

---

[5] Plaintiff entered into a fee agreement with present counsel on March 2, 2005.  (Tr. at 14.)

8

or carrying objects weighing up to 25 pounds.  As in light work, sitting may occur intermittently during the remaining time."

Although plaintiff's argument is sorely lacking, the ALJ's analysis is similarly deficient.  The ALJ found that plaintiff could do his past work as janitor which is medium work.  (Tr. at 23.)  The only physical limitations assessed by the ALJ were lifting and carrying more than 25 pounds frequently or 50 pounds occasionally, or doing complex and detailed tasks.  (Id.)

The medical evidence referred to by the ALJ in support of these findings was the report by Dr. Selcon of QTC Medical Group.  This internist conducted a consultative evaluation on May 16, 2003, in which he concluded that plaintiff could sit for an unlimited number of hours in a work day, stand or walk for less than two hours in a day, lift twenty pounds occasionally and ten pounds frequently, and would have the following postural limitations: climbing, stooping, kneeling, and crouching.  (Tr. at 168.)  It is unknown how the ALJ came to the conclusion of medium work based on this report which is clearly more restrictive.

Plaintiff misses the real issue here which is the ALJ's defective analysis.  Although the ALJ states that he relies on this report, the record which actually supports the ALJ's decision but which is not mentioned at all by the ALJ, are the assessments by the state agency examiners.  One evaluation, dated June 31, 2003, states that plaintiff is not limited at all physically. (Tr. at 226.)  The other evaluation, dated September 22, 2003, finds that plaintiff can basically do medium work.  (Tr. at 227-34.)  This examiner finds that plaintiff can lift 50 pounds occasionally, and 25 pounds frequently.  She finds that plaintiff can stand and/or walk for six hours, sit for six hours, and push and/or pull for an unlimited period of time.  (Id. at 228.)  Postural limitations such as climbing, balancing, stooping, kneeling, crouching and crawling are occasionally limited.  (Id. at 229.)  Both of these reviewers did not examine plaintiff but based their evaluations on the record.

Therefore, plaintiff's argument should have been that the ALJ erred in ignoring the opinion of the consulting physician in favor of the opinions of two nonexamining physicians.

> The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician. Pitzer v. Sullivan, 908 F.2d 502, 506 (9th Cir.1990); Gallant v. Heckler, 753 F.2d 1450 (9th Cir. 1984). As is the case with the opinion of a treating physician, the Commissioner must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician. .... And like the opinion of a treating doctor, the opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record.

Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1996).

Here, the ALJ stated that he was relying on the consultative internal medicine examination; however, he actually must have relied on the two nonexamining evaluations which were not mentioned by him. (Tr. at 21.) Assuming this intention, the ALJ did not give specific and legitimate reasons to reject the opinion of Dr. Selcon. Therefore, the case must be remanded for proper analysis.

CONCLUSION

The court finds the ALJ's assessment is not supported by substantial evidence in the record or based on the proper legal standards.[6]

Accordingly, IT IS RECOMMENDED that plaintiff's Motion for Summary Judgment be granted in part, the Commissioner's Cross Motion for Summary Judgment be denied, and the Clerk be directed to enter Judgment for the plaintiff. This case should be remanded for further findings pursuant to sentence four of 42 U.S.C. § 405(g).

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within ten (10) days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections

---

[6] Nothing in this decision should preclude plaintiff on remand from submitting evidence to demonstrate that his intellectual deficiencies were present prior to age 22.

10

1 | shall be served and filed within ten (10) days after service of the objections. The parties are
2 | advised that failure to file objections within the specified time may waive the right to appeal the
3 | District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).
4 | DATED: 2/20/07

/s/ Gregory G. Hollows

GREGORY G. HOLLOWS
U.S. MAGISTRATE JUDGE

GGH/076
Jackson1779.ss.wpd